IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NANCY BELFORT,

    Plaintiff,

    v.

CORPORACION HOGAR SAN AGUSTIN Y TERESA, et al.,

    Defendants.

CIVIL NO. 07-1240 (RLA)

**ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY
AND LIMITING TRIAL TO DAMAGES**

    Plaintiff has moved the court to enter partial summary judgment in this action finding that defendant's acts or omissions were negligent and the proximate cause of the death of decedent JUANA BELFORT.

    The court having reviewed plaintiff's legal arguments as well as the documents submitted in support therewith hereby finds that a finding of liability as requested is warranted.

**PROCEDURAL BACKGROUND**

    Plaintiff, NANCY BELFORT, instituted this action seeking damages for the death of her mother allegedly caused by the negligence of the defendant HOGAR SAN AGUSTIN Y TERESA ("HOGAR").

    At the Further Initial Scheduling Conference held on May 30, 2008,[1] the following discovery deadlines relevant to the matter currently before us were set:

---

[1] See Minutes (docket No. 63).

**CIVIL NO. 07-1240 (RLA)**                                                **Page 2**

---

| | | |
|---|---|---|
| | 6/30/08 | HOGAR to provide a description of the witnesses listed as #4 to #16 in the Second Joint ISC memorandum (docket No. 58) and their knowledge of decedent and/or her pain.[2] |
| | 6/30/08 | HOGAR to identify expert witnesses. |
| | 7/31/08 | HOGAR to submit expert witness reports. |
| | 7/31/08 | Conclusion of depositions of parties and/or fact witnesses. |
| | 8/12/08 | Blocked for deposition of HOGAR's expert witnesses. |
| | 8/26 & 28/08 | Alternate dates for expert depositions. |
| | 10/17/08 | Dispositive Motions |

At the STATUS/SETTLEMENT CONFERENCE held on September 11, 2008,[3] the court became aware that HOGAR had failed to provide a description of its witnesses listed as #4 through #16 nor had defendant complied with the deadlines pertaining to expert witnesses. Accordingly, both those particular fact witnesses as well as plaintiff's expert witnesses were deemed waived.

Defendant's subsequent request for reconsideration of this ruling was denied. In its order denying reconsideration the court noted that "[a]part from the fact that petitioner has failed to

---

[2] HOGAR was specifically admonished that failure to provide this information by the court-imposed deadline would result in the automatic waiver of these witnesses in this action. See Minutes (docket No. 63) n.1.

[3] See Minutes (docket No. 76).

adduce any valid reason for disregarding the court's case management orders, allowing petitioner to comply with its discovery obligations at this late date would in effect deprive plaintiff of its [sic] right to take the depositions of these fact and expert witnesses."[4]

## LOCAL RULE 56(c)

Motions for summary judgment must comport with the provisions of Local Rule 56(c) which, in pertinent part, reads:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

This provision specifically requires that in its own statement of material fact respondent either admit, deny, or qualify each of movant's proffered uncontested facts and for each denied or qualified statement cite the specific part of the record which supports its

---

[4] Order Denying Defendant's Motion for Reconsideration (docket No. 88).

**CIVIL NO. 07-1240 (RLA)** Page 4

denial or qualification. Respondent must prepare its separate statement much in the same manner as when answering the complaint.

The purpose behind the local rule is to allow the court to examine each of the movant's proposed uncontested facts and ascertain whether or not there is adequate evidence to render it uncontested. "This 'anti-ferret' rule aims to make the parties organize the evidence rather than leaving the burden upon the district judge." Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005). "The purpose of this 'anti-ferret rule' is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given case to the district court." Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007) (internal citations omitted). *See also*, Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (summary judgment should not "impose [upon the court] the daunting burden of seeking a needle in a haystack"); Leon v. Sanchez-Bermudez, 332 F.Supp.2d 407, 415 (D.P.R. 2004).

"When complied with, they serve to dispel the smokescreen behind which litigants with marginal or unwinnable cases often seek to hide and greatly reduce the possibility that the district will fall victim to an ambush." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (citation, internal quotation marks and brackets omitted).

**CIVIL NO. 07-1240 (RLA)**                                                                 **Page 5**

Apart from the fact that Local Rule 56(e) itself provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted" in discussing Local Rule 311.12, its predecessor, the First Circuit Court of Appeals stressed the importance of compliance by stating that the parties who ignore its strictures run the risk of the court deeming the facts presented in the movant's statement of fact admitted. "Given the vital purpose that such rules serve, litigants ignore them at their peril. In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." *Id*. *See also*, Alsina-Laboy, 400 F.3d at 80 ("Where the party opposing summary judgment fails to comply, the rule permits the district court to treat the moving party's statement of facts as uncontested"); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 46 (1st Cir. 2004) ("uncontested" facts pleaded by movant deemed admitted due to respondent's failure to properly submit statement of contested facts.)

"[A]bsent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judgment being unfairly sandbagged by unadvertised factual issues.'" Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir.

**CIVIL NO. 07-1240 (RLA)** **Page 6**

2000) (citing <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 931 (1st Cir. 1983)).

Providing an alternative statement of facts without addressing the movant's factual proposals individually does not conform to the Local Rule's mandate and will cause defendant's proffered facts to be deemed uncontested. <u>Mariani-Colon</u>, 511 F.3d at 219. Further, denials without more are ineffective. Rather, the opposing party "must offer specific facts to counter those set out by [defendant]. [N]onmovant's facts must demonstrate the existence of definite competent evidence fortifying plaintiff's version of the truth. This is the case even where motive and intent are at issue. [Plaintiff] may not meet his burden by citing an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." <u>Arroyo-Audifred v. Verizon Wireless, Inc.</u>, 527 F.3d 215, 219-20 (1st Cir. 2008) (internal citations and quotation marks omitted).

A party's failure to abide by the strictures of Local Rule 56(c), however, does not automatically entitle movant to summary judgment as requested. "It mainly means that the district judge can accept the moving party's allegedly uncontested facts as true, but whether or not this justifies summary judgment for the moving party depends upon the legal and factual configuration that results." <u>Caban Hernandez</u>, 486 F.3d at 8.

**CIVIL NO. 07-1240 (RLA)**                                                                  **Page 7**

In the case before us, HOGAR did not raise particularized objections to plaintiff's proffered Statement of Facts as mandated by Local Rule 56(c).[5] Accordingly, we shall consider plaintiff's submitted facts - which have adequate evidentiary support - as uncontested.

## UNCONTESTED FACTS

We find the following facts submitted by plaintiff which are duly supported by the evidence are uncontested.

1. Plaintiff NANCY BELFORT is decedent JUANA BELFORT's daughter.

2. Plaintiff signed a contract with HOGAR for the care of her mother and thus was fully responsible for the monthly payments, decedent's personal needs and any other miscellaneous needs.

3. Pursuant to the aforementioned contract, HOGAR was responsible for decedent's security, safety and medical treatment.

---

[5] Instead, defendant submitted its own Controverted Material Facts in its response to plaintiff's summary judgment request. See Controverted Material Facts (docket No. 93). However, the vast majority of those facts are based either on the statements of individuals or on the opinion of defendant's expert all of which were previously stricken by the court.

Additionally, we concur with the objections raised by plaintiff as to the remaining proffered facts.

Based on the foregoing, we need not consider defendant's alleged material facts in controversy for purposes of disposing of plaintiff's summary judgment request.

**CIVIL NO. 07-1240 (RLA)**                                                              **Page 8**

4.  Decedent was admitted to the HOGAR in February 2002 where she remained until September 2006.

5.  MYRIAM AVILES, plaintiff's cousin, visited decedent regularly at the HOGAR and kept plaintiff informed as to decedent's condition.

6.  DR. RAUL ROSADO FIGUEROA was the only physician provided by HOGAR to care for decedent and was, in effect, her treating physician.

7.  When decedent arrived at the HOGAR, she was able to ambulate, albeit with difficulty.

8.  At least by May 2006, the Sunday prior to Mother's day, decedent was placed in a wheelchair. Her relatives were informed that it was to prevent falls.

9.  According to the notes of DR. RAUL ROSADO FIGUEROA, from 2002 to 2006 decedent's muscular-skeletal system was "o.k." with no changes and she could ambulate with difficulty. This statement continued in the record even after decedent was placed in a wheelchair.

10. Shortly after decedent was placed in a wheelchair, she became bedridden as a result of a fracture of her right hip evidenced by an x-ray taken at Hospital Metropolitano.

12. A person with a displaced hip fracture such as the one decedent had could not have basically normal extremities as recorded by DR. RAUL ROSADO FIGUEROA.

**CIVIL NO. 07-1240 (RLA)**                                                                 **Page 9**

13. At the time of her death JUANA BELFORT was 77 years old.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-

**CIVIL NO. 07-1240 (RLA)** **Page 10**

---

Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)). "In marshaling the facts for this purpose we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however, that we ought to draw *unreasonable* inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007) (internal citation omitted italics in original).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominquez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility

**CIVIL NO. 07-1240 (RLA)**                                                                 **Page 11**

determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### NEGLIGENCE

Plaintiff claims that defendant is liable due to the failure of both the physician and the HOGAR's staff to detect decedent's fractured hip and adequately monitor decedent's condition.

**CIVIL NO. 07-1240 (RLA)** **Page 12**

Art. 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit., § 5141 (1990), governs tort liability in Puerto Rico. It provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Negligence is the failure to exercise due diligence to avoid foreseeable risks.

According to this provision, a person is liable for damages resulting from his/her negligent acts or omissions. In order to prevail plaintiff must establish: (1) a negligent act or omission, (2) damages, and (3) a causal relationship between them. Irvine v. Murad Skin Research Lab., Inc., 194 F.3d 313, 321 -322 (1st Cir. 1999); De-Jesus-Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998); Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987); Pons Anca v. Engebretson, 160 D.P.R. 347, 354 (2003); Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); Toro-Aponte v. E.L.A., 142 D.P.R. 464, 473 (1997).

The mere fact that injuries or damages ensue is not grounds for liability under art. 1802 for that would entail absolute liability. Defendant will be liable only for those reasonably foreseeable consequences to its conduct. De-Jesus-Adorno, 160 F.3d at 842; Pons Anca, 160 D.P.R. at 354; Montalvo, 144 D.P.R. at 755; Toro-Aponte, 142 D.P.R. at 473; Ocasio Juarbe v. Eastern Airlines, Inc., 125 D.P.R. 410, 418 (1990) *official translation reproduced in full in* 902

**CIVIL NO. 07-1240 (RLA)**                                                             **Page 13**

F.2d 117 (1ˢᵗ Cir.1990); Jimenez v. Pelegrina Espinet, 112 D.P.R. 700, 704, (1982); Pacheco v. A.F.F., 112 D.P.R. 296, 300 (1982).

Additionally, pursuant to art. 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit., 31 § 5142 (1990), tort liability may be incurred not only for personal [negligent] acts and omissions, but also for those [negligent acts or omissions] of the persons for whom [a principal] should be [held] responsible." For instance, hospitals and physicians can be held vicariously liable for the negligent acts or omissions of their respective employees. Lopez v. Dr. Cañizares, 163 D.P.R. 119, 135 (2004); Blas v. Hosp. Guadalupe, 146 D.P.R. 267, 349 (1998). *See also*, Márquez Vega v. Martínez Rosado, 116 D.P.R. 397, 404-06 (1985) (hospitals jointly liable for acts or omissions of physicians in the emergency room when the patient initially seeks medical assistance from the hospital rather than directly from a particular medical doctor).

Physicians are bound to furnish patients with that care and attention which in light of modern means of communication and knowledge satisfies the professional requirements generally recognized by the medical profession at the time that the medical care was provided. Lopez v. Dr. Cañizares, 163 D.P.R. at 133; Marti v. Abreu, 143 D.P.R. 520, 526 (1997); Santiago Otero v. Mendez, 135 D.P.R. 540 (1994); Rodriquez Crespo v. Hernandez, 121 D.P.R. 639 (1988); Nuñez v. Cintron, 115 D.P.R. 598, 613 (1984).

**CIVIL NO. 07-1240 (RLA)**                                                        **Page 14**

In order to prevail in a medical malpractice action, plaintiff must prove, by a preponderance of the evidence, that the physician was negligent and that his negligence was the proximate cause of the patient's injuries. Lopez v. Dr. Cañizares, 163 D.P.R. at 133; Blas v. Hosp. Guadalupe, 146 D.P.R. at 350.

An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence in the case that the act or omission was the factor which most probably brought about or actually caused the injuries complained of, and that the injuries were either a direct result or a reasonably probable consequence of the act or omission charged by plaintiffs. Crespo v. Hernandez, 121 D.P.R. 639 (1988).

## LIABILITY

According to DR. GERMAN MALARET, plaintiff's expert witness, decedent's fracture was a result of some kind of trauma most likely a fall. This must have happened while decedent was at the HOGAR, most probably prior to May 2006, since by that date she was confined to a wheelchair.

If decedent was ambulating - albeit with difficulty - and according to DR. ROSADO FIGUEROA's notes her musculo-skeletal system was in good condition gives rise to the question: why was she placed in a wheelchair and subsequently bedridden? The logical conclusion is that she was in pain or could not walk due to the hip fracture

which was not diagnosed by DR. ROSADO FIGUEROA and which also went undetected by the HOGAR's staff.

DR. MALARET opined that DR. ROSADO FIGUEROA was negligent in that he failed to diagnose decedent's fractured hip. Nor did the HOGAR personnel, who were responsible for her daily care, become aware of and/or ignored her condition.

Additionally, DR. MALARET indicated that the care provided by the HOGAR's staff for decedent's ulcer condition was deficient in that she was not turned as frequently as required. This type of ulcer develops due to poor skin care and continued pressure in the area in a patient that has poor circulation, particularly at the pressure points, i.e., shoulders, hips, back, and heels.

DR. ROSADO FIGUEROA described for the first time a type-three ulcer on September 1, 2006 which, according to DR. MALARET, means that decedent had ulcers for a prolonged period of time prior to this date.

Due to the untreated fracture, plaintiff was initially confined to a wheelchair and subsequently bedridden which caused plaintiff to develop severe decubitus ulcers in various parts of her body. DR. MALARET concluded that decedent's death was proximately caused by the irreversible deterioration and complications resulting from her being bedridden and the ensuing grave ulcerous condition which was deficiently treated.

**CIVIL NO. 07-1240 (RLA)**                                                                 **Page 16**

It is axiomatic that in this particular case the HOGAR is responsible for the negligent acts or omissions of both DR. ROSADO FIGUEROA and its employees. Similar to a hospital setting, this physician was contracted directly by the institution to provide medical care to the confined elderly population. As a matter of fact, it is undisputed that this was the only medical doctor who regularly attended decedent at the nursing home.

Thus, we find that defendant's negligence has been clearly established by plaintiff's expert witness.[6] The record reflects that decedent's fractured hip went undetected by the treating physician for an inordinate period of time.

The negligence of the HOGAR's staff is also well supported in DR. MALARET's report. Again, there is no reference to decedent's fracture in the HOGAR's records. It is evident from DR. MALARET's conclusions that the HOGAR staff was negligent both in failing to detect decedent's fracture and also in being derelict in the care of a wheelchair bound and bedridden patient which resulted in the development of decubitus ulcers.

Thus, the delay both by the physician and the staff in noticing the fracture added to the failure to adequately handle the bedridden

---

[6] Defendant's arguments in the opposition to the summary judgement request are based exclusively on the testimony of its expert and personnel all of which were stricken by the court. Accordingly, this evidence may not be considered in our ruling.

**CIVIL NO. 07-1240 (RLA)** **Page 17**

patient caused her to develop the decubitus ulcers which eventually resulted in her death.

### CONCLUSION

Based on the foregoing, plaintiff's Motion for Partial Summary Judgment as to Liability (docket No. **83**)[7] is **GRANTED**.

Accordingly, we find that defendant is liable for the negligent acts or omissions of DR. ROSADO FIGUEROA as well as those of the HOGAR's staff which negligence was the proximate cause of decedent's demise.

It is further ORDERED that the trial scheduled for **January 20, 2009,** shall be limited to damages only.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 18th day of December, 2008.

S/Raymond L. Acosta<br>
RAYMOND L. ACOSTA<br>
United States District Judge

---

[7] See Opposition (docket No. **92**) and Reply (docket No. **102**).